The court will proceed to the sixth case, United States v. Jansen. Ms. Christensen. Good morning, your honors. May it please the court, counsel. My name is Joanna Christensen and I represent the appellant, Christopher Jansen, in this case. As a general rule, an attorney must investigate a case in order to provide a minimally competent professional representation. In this case, defense counsel failed to conduct any meaningful investigation and thus provided ineffective assistance of counsel that prejudiced Mr. Jansen. This also provided a fair and just reason for Mr. Jansen to withdraw his guilty plea. The district court abused its discretion by denying Mr. Jansen's motion to withdraw his guilty plea. First, we must, of course, look at the standards of reasonableness in criminal cases in this type of situation. And the ABA issues those standards, saying there is a duty to investigate. It not only covers the charges as were presented to the attorney, but in this case, particularly, the other charges that would have been brought had Mr. Jansen not agreed to waive the statute of limitations. There's no indication in this record that defense counsel sought information about the other charges that Mr. Jansen would have been charged with had he not agreed to waive the statute of limitations. We know that the Dean Foods transactions all occurred in 2002. By the time the first information was filed in December of 2007, all of those transactions were beyond the statute of limitations. So by the time defense counsel at issue here comes onto the case in 2008, all of those are off the table unless the government obtains this waiver. At that point, it becomes essential for defense counsel to say, what's your proof on other charges and how much worse could this be? And that's essentially what we're talking about here, is what does the government have that would make me say to my client, waive this defense on this charge to avoid a higher risk on another charge? We do know that the statutory maximum would have changed from five years to 20 years, but we don't know if there was any investigation done about the amount of loss that would be associated with other charges, which is the primary motivating factor in the guidelines, which usually determines how much time a defendant is going to spend in prison, or at least a better estimate than the statutory maximum. At this extensive evidentiary hearing, Mr. Steinbeck, defense counsel, testified variantly about what he did in representing Mr. Jansen. The first time around said that he had a meeting with the FBI agent, the IRS agent, the AUSA, and perhaps another person as well. It was some time ago, and took them at their word that there were other more serious charges that could be brought. That's the failure at that point. He does not admit that he should have done that, and the reasons at that point he gives is that he saw this need to hurry. He didn't want to remind the AUSA about the evidence against Mr. Jansen, and that he was avoiding, of course, this additional statutory charge. Those are hollow excuses when you look at the entire record. The need to hurry should have borne out a quicker resolution of this case, certainly a quicker information filed. Steinbeck came on in April of 2008. The information wasn't filed until September. If there was a true hurry, it would have been filed in a more expeditious manner. Mr. Jansen didn't plead guilty until October of 2008, and he didn't want to rock the boat with the AUSA. If we're looking at this case from the beginning, the boat was rocking. He had already filed an information and then withdrew it because they could not reach a plea agreement, and had indicated in some of the exhibits, at least, that the AUSA was unwilling to further negotiate with Mr. Jansen. The boat was rocking, and perhaps part of defense counsel's job was to come in and say, okay, let's kind of calm this down. Let's talk about what we can do from here. There were no real changes made to the information. It's identical from the first one to the second one, and minor changes made to the proposed plea agreement. Counsel, has the defense found anything that would have changed his mind about pleading guilty? Defense counsel or? No. Oh. At this point, in this challenge to the denial of the withdrawal of the guilty plea. In the record, there's not enough for me to certainly make that point. If I were able to say, look at this, this is what you would have been charged with. Usually in ineffective assistance claims based on failure to investigate, to get relief, you've got to show what the investigation would have showed. Right. Right? Right. So do we have that here? No. There's nothing in the record that shows that. So why is that a sufficient basis for us to rule at this point? Well, the problem is that what the testimony was, was very vague as to what defense counsel did, and never provided that information. And a large portion of this is where Mr. Jansen is representing himself. And so he focused on the failure to obtain the discovery, and then didn't take it a step further to say in this discovery there was X, Y, and Z that defense counsel should have investigated and didn't. So there is a limitation in the record in that way. However, we do have the issue of Mr. Jansen choosing to go to trial. If you look at the two counts, he had a reasonable basis for going to trial if he did not have adequate advice as to what he risked by not accepting the plea agreement and going to trial on whatever else was charged. So as far as the prejudice prong, a lot of this was focused on the discovery. And in a case such as this, the discovery, of course, is going to be important. But it's not the only focus, and I want to make that clear from the government's brief. This is not our only focus. Defense counsel's duty is above and beyond what his client tells him and what the government may have. You can take the government at its word to a certain extent, but as a defense attorney, you must continue to investigate to see if there is a factual basis for either the charges he pled guilty to or the threat of more serious charges. In conclusion, I see that I'm almost into my rebuttal time, so I'll save most of that. I did want to – Well, you haven't ever contended that there isn't a factual basis for the charges that he pled guilty to. No, no, that's not part of our argument. Right, so let's take that off the table. Whether there was a duty on the part of Mr. Steinbeck when he was brought into the case after your client burned through a bunch of other lawyers and he was brought in for the express purpose or so found the district judge to get the best deal possible by cooperating with the government because the prior attorneys and the defendant had exasperated government's counsel by that point. And so it was to just get the ship righted and get the plea on the record because the prior plea hearing had been aborted. And so we've got those factual findings by the judge that he was brought in for that limited purpose, not to do a full-blown investigation. The defendant was admitting his guilt and just wanted the best deal possible, and there's no argument here that this wasn't a good deal. He's just making the bold claim that, oh, I wouldn't have pleaded guilty if he had done a full-blown investigation. But there's really no factual basis for that. Well, I'm not making the concession that the only reason Steinbeck was hired was let me back up. We have that as a factual finding by the judge. It's not clearly erroneous on this record because of the context. This was a pre-indictment plea negotiation that had been ongoing for quite some time as your client was trying to improve his lot by negotiating. So there really wasn't any dispute about what the factual basis for the charges was and that he was guilty. It was a question of getting the plea on the record to the charges that the government was willing to limit the case to. Well, the problem is that in order to agree to waive that statute of limitations, there has to be a real investigation into what the government had because that's a significant waiver. The government couldn't have charged any of those offenses dealing with Dean Foods without that waiver.  But the ABA standards do not limit defense counsel to putting blinders on and say, well, he's going to plead guilty and I don't have to do anything else because your job is to advise a defendant, even who wants to plead guilty, if this really is the best deal. And without Steinbeck doing more investigation into what else Mr. Jansen faced, possibly he couldn't have known that this was the best deal and could not have pled guilty. What would be the line of inquiry he should have made specifically? I mean, what can you get from the government and what should you request in this search for more discovery? The primary focus is this very vague assertion that the government had a conspiracy or some other fraudulent scheme that's not alluded to by Steinbeck at all. He said, I got the distinct impression that there were other acts of fraud. Well, in order to make a real assessment, you have to know when they occurred, if they also were outside the statute of limitations, or if they would have gone to the statutory maximum of 20 years rather than five. There's no evidence that that happened. Even asking the government to say, hey, just show me something about those other acts of fraud. If that had happened, he would have testified about it, and he did not. So that's the basis for where our deficient performance comes in. All right. Thank you, Ms. Christian. Thank you. Mr. Lowe. May it please the Court, just to follow up for a moment on the last topic, the record is not complete in terms of what the other investigations would have been, naturally because they weren't finished. It was a standard procedure, so to speak, within our office, that if we're doing a complex investigation and we think we have a realistic plea chance, we will stop our investigation and see if the plea pans out, hopefully not for too long, just enough time to see it happen, and then proceed. And in this case, there had been further work on it. But the investigation, all of the aspects of the investigation had been started, on other aspects of the investigation besides steamed foods. The conversation, as I think is reasonably interpreted from Steinbeck's testimony, is that the government said we would restart those negotiations or those investigations. In any event, the District Court did correctly deny the motion to withdraw the guilty plea. As the benches pointed out, Mr. Steinbeck did do what he was engaged to do. He was engaged to get the best plea deal, as the District Court found. There was also one other important aspect of his engagement, and that was that Mr. Jansen had a business partner named Granite, Gilbert Granite, who was represented by counsel. And before the plea took place, Mr. Steinbeck testified that he spoke with Mr. Granite about the matter and spoke with Mr. Granite's attorney about the matter. And Mr. Steinbeck testified and the court found that Mr. Jansen had said to Mr. Steinbeck, well, you know, I'd like to see what I can do in terms of my plea deal to try and take the pressure off of or avoid anything happening to my longtime business partner, Gilbert Granite. And there was a specific provision in the original plea agreement in this case which required Mr. Granite to plead guilty and be sentenced within nine months of the plea or the government could back out of Mr. Jansen's deal. When the government went further down the road and concluded that it was not going to prosecute Mr. Granite, it returned and negotiated with Mr. Steinbeck and Mr. Jansen a waiver of Rule 410 and amended the plea agreement and Mr. Jansen was in court for a subsequent Rule 11 proceeding and did agree to waive his right to not have his admissions in the plea agreement used against him. So Mr. Steinbeck did in fact benefit Mr. Jansen and not only did he get the best deal he could for Mr. Jansen, he also benefited him by what happened in the long run with Mr. Granite. Steinbeck, I would not stand before the court and say that Mr. Steinbeck did an extensive investigation. That is simply not the case. As the district court pointed out, he didn't, that's not what he was hired for. Instead, he did review a significant number of records. He also, although he could not recall the nature of those records or the numbers of them, an email that's in evidence that he testified about referenced a box of documents. He met and spoke with government counsel multiple times. He met and spoke with the defendant many times. As I said, he spoke with Granite and Granite's attorney. All of those things are investigation. Is there more that could have been done? Certainly. Steinbeck's strategy for handling the matter was reasonable under the circumstances as he understood them at the time. And Mr. Jansen benefited from that strategy. So Mr. Steinbeck understood that the government was no longer willing to negotiate with Mr. Jansen about a plea. And he came in and part of his strategy was to get the government to re-engage in negotiations, which he succeeded in doing. He wanted to forego getting complete discovery from the government because he didn't want the government to go back through its discovery and risk changing its mind or finding something else that it wanted in the plea agreement. That benefited Mr. Jansen. And the way that's proven that it benefited Mr. Jansen is that the defendant, after getting discovery, has found nothing that Mr. Steinbeck could have found that would have changed his opinion about the plea. He also wanted to halt the government investigation, and that happened. The defendant pointed out in their reply brief that some investigation continued, but that was for sentencing purposes. Nothing changed in terms of the relevant conduct, which had been agreed upon. So there was no enhancement of the exposure of Mr. Jansen by the ongoing investigation that related to specific sentencing matters. Mr. Love, isn't it pretty unusual for the government to allow the statute of limitations to expire before you get a waiver? It is unusual, Your Honor, and it's not part of the record why we did that. And so I could answer it if the court tells me, but I don't feel I should without that. I'll let it go with that. Thank you. And Mr. Steinbeck also, as was mentioned by the bench, obtained the new conviction under the old, I should say, wire fraud statute, leaving his maximum penalty at five years instead of 20. So all of those circumstances at the time, as Mr. Steinbeck understood them, not the way Mr. Jansen may look at them in hindsight now, were reasonable at that time. And the comment to the ABA rule that's cited in the government's brief, ABA standard that's cited in the government brief, there are two comments that are cited, specifically recognize that obtaining a better plea agreement is a basis for less investigation. And that, I contend, is exactly what happened here. The district court was also correct when it determined there was no objective evidence that the defendant would have pled guilty if Mr. Steinbeck had obtained further disclosures from the government. The defendant has only pointed to, and the district court pointed out, that he's only pointed to his own assertions in his written motion to withdraw his plea of guilty, and that is simply not objective evidence and insufficient to make his case. There was substantial objective evidence that the defendant did not intend to do that. He attempted to hire Steinbeck, or he at least told Steinbeck he wanted to hire him back into the case once Steinbeck changed his mind about his opinion. He, and as the district court pointed out, the defendant has come forth with no specific witness, no anticipated testimony by any witness, no documents, no potential defenses, no information from extensive government disclosures that would have helped Mr. Jansen or Mr. Steinbeck in their analysis of this case. So that is, as I think the bench was getting at, what makes this case contrary to almost all of the inadequate investigation cases, and that is that there's simply nothing, no prejudice that remains. So unless the court has any other questions, I'll respectfully request that the defendant's conviction be affirmed and that the restitution matter be remanded for clarification by the district court. Thank you, Mr. Lowe. Ms. Christensen, I think your time has expired, but you may have two minutes. Thank you, Your Honor. I will point the court to the reply brief where we talk about investigations, and the FBI agent testified not just that they were investigating towards sentencing, that they were investigating other crimes. The government filed a motion for the district court to hold that Mr. Jansen had breached the plea agreement, and then they wanted all that evidence that they used for obstruction of justice at sentencing. And the concept of a defense attorney being engaged only to do a plea goes straight against the ABA criminal justice standards, and it does matter what the defendant says, but you are not limited if your client says, I want to plead guilty. You still have a duty to represent your client. If not, the government could simply say, you know, these are facts. The defense attorney says, okay, my guy wants to plead guilty. We're done here. That's not effective assistance of counsel. It does depend on the situation, but in this case, with a massive fraud, with other potentially massive frauds alleged, tax schemes, years of documents, it's not reasonable in this case. Unless the court has questions, we ask that this court reverse and remand for further proceedings. Thank you, Ms. Christiansen. Thank you. Thank you. Government counsel, Mr. Love, and the case will be taken under advisement. The court will stand in recess. Thank you.